**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **RONNIE SCROGGINS,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| | § | |
| | § | |
| | § | |
| **AIRGAS USA, LLC,** | § | |
| **Defendant** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**COMES NOW**, Plaintiff, Ronnie Scroggins (hereinafter "Plaintiff"), and complains of Defendant, Airgas USA, LLC (hereinafter "Defendant"), and would respectfully show unto the Court as follows:

**I.**

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§1331 and 1343.  In addition, Plaintiff invokes this Court's jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000-e, et seq. (hereinafter "Title VII").

2.     Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

PLAINTIFF'S ORIGINAL COMPLAINT

## II.

## PARTIES

3.    Plaintiff, Ronnie Scroggins, is a black/African American citizen of the United States and a resident of Dallas County, Texas.  At all times relevant hereto, Plaintiff was an employee of Defendant, Airgas USA, LLC.  Plaintiff has been subjected to unlawful employment practices committed in Dallas County, Texas by employees and agents of the Defendant.

4.    Defendant, Airgas USA, LLC., is a foreign limited liability company licensed and registered to do business in Texas.  Defendant may be noticed of this lawsuit by serving its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## III.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.    On September 13, 2022, Plaintiff filed a charge of employment discrimination against Defendant with the Dallas District Office of the Equal Employment Opportunity Commission ("EEOC") within 300 days of the last discriminatory act.  Any allegations in this action which pertain to events that occurred after 300 days of the last discriminatory act pertain to allegations of continuing violation.

6.    Plaintiff received a "Notice of Right to Sue" concerning the charge by letter dated April 13, 2023, entitling him to institute a civil action within 90 days of the date of receipt of said notice.  This action is timely filed.

PLAINTIFF'S ORIGINAL COMPLAINT

**IV.**

**FACTS AND CAUSES OF ACTION**

7.      This action is authorized and instituted pursuant to Title VII.  This is a legal proceeding for legal and/or equitable relief available to secure the rights of the Plaintiff under these statutes.

8.      Beginning on or about August 24, 2022, and continuing through September 9, 2022, Plaintiff was repeatedly subjected to discrimination based on race, black/African American, retaliation, harassment and a hostile work environment under Title VII.

9.      Plaintiff was employed with the Defendant from July 11, 2022 until September 9, 2022. While employed by the Defendant, Plaintiff was a Production Operator.

10.      During his tenure with the Defendant, Plaintiff received good verbal acknowledgements from other employees on site and from the drivers at the loading dock. Plaintiff was never informed of poor work performance. During his tenure, Plaintiff received one unwarranted disciplinary action/reprimand after an altercation with another employee, Jason Dunlap (white male), who kept provoking Plaintiff and teasing him about his past life as a convict.

11.      Plaintiff worked with his brother, DaMarea Scroggins (hereinafter "DaMarea"). Plaintiff's coworkers frequently commented about how tall and big he was to be so young and how they could not understand how he was DaMarea's little brother. Defendant's Manager, Jason Dunlap, was intimidated by Plaintiff's size and build.

PLAINTIFF'S ORIGINAL COMPLAINT

12.    Plaintiff did not receive proper training when hired. For instance, he was told that he did not need to clock out for lunch unless he was leaving. However, Plaintiff was in fact supposed to clock out. Plaintiff also never received a proper lunch break daily due to a shortage in staff.

13.    When Plaintiff began to work under the management of Jason Dunlap, he began to always tell Plaintiff about the 17 years he did in prison and would walk around with his chest poked out. Mr. Dunlap also began to follow Plaintiff around the premises everywhere he went, even to the bathroom.

14.    In August 2022, while on a smoke break, Plaintiff was under a shed with DaMarea chatting. Mr. Dunlap began to pick on Plaintiff by throwing ice at the shed he was standing under with DaMarea. Mr. Dunlap was spitting the ice into his hand and throwing it at the Plaintiff.

15.    On August 24, 2022, Plaintiff and Mr. Dunlap got into an altercation instigated by Mr. Dunlap. They were arguing face to face and other employees stepped in between them to break them up. The altercation began because Mr. Dunlap was following Plaintiff around the warehouse that whole morning harassing him. Plaintiff was approached by Mr. Dunlap as he was entering the bathroom, and Mr. Dunlap requested Plaintiff's forklift when there were many other forklifts available for him to use. Plaintiff then asked Mr. Dunlap if there was an issue with them and Mr. Dunlap responded "yes." Plaintiff was sent home while Mr. Dunlap remained at work during the investigation.

PLAINTIFF'S ORIGINAL COMPLAINT

16.    Plaintiff was called into the office the following day regarding the incident and was told to sign a write up, which he refused. Defendant then told Plaintiff that he needed to remain at home while they conducted an investigation on him and Mr. Dunlap. Plaintiff was the only one sent home during the investigation. While Mr. Dunlap was still at work during the investigation, an employee said that Mr. Dunlap interfered with the investigation by opening the door to listen to HR representative Linda Brooks interview employees. Mr. Dunlap also approached DaMarea and stated: "Your little brother is a big guy, but I was ready for him."

17.    As a part of the investigation, Plaintiff told Defendant that Mr. Dunlap's breath smelled of alcohol when they got into the altercation, but Defendant still allowed Mr. Dunlap to remain at work. Plaintiff was placed on a final warning after the investigation and Mr. Dunlap received no discipline.

18.    Mr. Dunlap hired his friend's son, Shun (white male), who was not qualified for the job. Shun dropped a pallet of cylinders and Jason overlooked the situation and did not send Shun to take a drug test after dropping the cylinders. Taking a drug test after any accident, especially dropping a cylinder, is standard protocol.

19.    On September 8, 2022, Plaintiff was approached by J.D., a union representative, who stated: "The company knows that your mother works for a bad employment attorney and that she knows people down at the EEOC." J.D. then told Plaintiff "to watch out, because they are out to get you."

20.    On September 9, 2022, Plaintiff was being followed by another manager, Stanley

PLAINTIFF'S ORIGINAL COMPLAINT

Redding (white male). Plaintiff's coworkers began to tell him that they saw Mr. Redding following him. Mr. Redding continued to follow too closely to Plaintiff, which violates OSHA rules by getting in the way of him operating a forklift.

21.     Plaintiff suffered discrimination based on his race; retaliation based on his complaints against Mr. Dunlap's racially offensive comments; and hostile work environment as the result of his race. He was targeted by Mr. Dunlap and Mr. Redding, who are white. They provoked Plaintiff and disciplined him in order to get him terminated. Plaintiff's ability to perform his job at a high level was frequently interrupted by either Mr. Dunlap or Mr. Redding.

22.     Defendant's proffered business reason for Plaintiff's termination was mere pretext.

23.     On information and belief, Defendant followed a policy and practice of retaliation against Plaintiff based on Plaintiff's complaints to Ms. Brooks about Mr. Dunlap's racially offensive remarks and harassment.  These retaliatory practices and policies include, but are not limited to, retaliating against employees who make formal complaints, in violation of Title VII.

24.     On information and belief, Defendant followed a policy and practice of discrimination against Plaintiff because of his race, black/African American, in violation of Title VII.  The discriminatory practices and policies include, but are not limited to, discriminating against Plaintiff in the terms, conditions, and privileges of employment based on his race, in violation of Title VII.

25.     Plaintiff was subjected to a hostile work environment and adverse employment actions by Defendant based on Plaintiff's race and complaints to Ms. Brooks about Mr. Dunlap's

PLAINTIFF'S ORIGINAL COMPLAINT

racially offensive remarks and harassment.

26.     Plaintiff has suffered compensatory damages as the direct result of Defendant's discriminatory and retaliatory treatment of him.  Plaintiff would further show that Defendant's conduct was done willfully and with malice and that he is entitled to liquidated and exemplary damages.

27.     Defendant's conduct toward Plaintiff caused him severe emotional distress, pain and suffering and/or other nonpecuniary losses, for which Plaintiff seeks past and future compensatory damages.

28.     The amount of damages which Plaintiff seeks herein exceeds the jurisdictional minimum of this Court.

29.     All conditions precedent to the filing of this action have occurred or have been fulfilled.

**V.**

**<u>DAMAGES</u>**

30.     Plaintiff seeks statutory damages, back pay and front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and postjudgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled pursuant to Title VII.

31.     Plaintiff is entitled to actual damages, including pecuniary damages, mental anguish or emotional pain and suffering, inconvenience, and loss of enjoyment of life in the past and in the future, and such other and further relief to which Plaintiff is entitled because of the actions and/or omissions complained of herein.

<u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

## VI.

## JURY DEMAND

32.    Plaintiff respectfully requests a jury trial.

## VII.

## PRAYER FOR RELIEF

**WHIMEFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendant be cited to appear, and, that Plaintiff be awarded judgment against Defendant for statutory damages, compensatory, punitive and general damages, back pay, front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and postjudgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled.

Respectfully submitted,

IWU & ASSOCIATES

**/s/ Marshay Iwu**
Marshay Iwu
State Bar No. 24083204
P.O. Box 851553
Mesquite, Texas 75185-1553
Telephone: (214) 417-2738
Telecopier: (214) 272-3186
marshayiwu@lawyersdemandingjustice.com

**ATTORNEY FOR PLAINTIFF**

PLAINTIFF'S ORIGINAL COMPLAINT