IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RONNIE SCROGGINS, § | |
| PLAINTIFF, § | |
| § | |
| v. § | CASE NO. 3:23-CV-1558-L (BK) |
| § | |
| AIRGAS USA, LLC, § | |
| DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 8, *Defendant Airgas USA, LLC's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted*, Doc. 5, is before the Court for the issuance of findings and recommended disposition. For the reasons below, the motion should be **GRANTED**.

**I. BACKGROUND**

*A. Factual History*

As pled in the Complaint, Plaintiff, an African-American man, worked for Defendant as a production operator for about two months until Defendant terminated his employment in September 2022. Doc. 1 at 3. During that time, Plaintiff's "good verbal acknowledgements" from colleagues were marred only by an "unwarranted disciplinary action/reprimand" following an "altercation" with a white supervisor, Jason Dunlap (who Plaintiff believes was intimated by his physical "size and build"). Doc. 1 at 3.

Plaintiff complains of his treatment by Dunlap and another white supervisor, Stanley Redding, as well as Defendant's proffered reason for terminating his employment. Doc. 1 at 4-7. Plaintiff alleges that Dunlap would follow Plaintiff "everywhere." Doc. 1 at 4. In addition to

"teasing Plaintiff about his past life as a convict," Dunlop would "always" tell Plaintiff about his own time in prison. Doc. 1 at 3-4. When Plaintiff and his older brother (who also worked for Defendant) were on a smoking break one day, Dunlap "pick[ed] on" Plaintiff by spitting ice into his hand and throwing it at Plaintiff and the shed that Plaintiff and his brother were standing under. Doc. 1 at 4. That same month, Plaintiff and Dunlap had a face-to-face "altercation." Doc. 1 at 4. The entire morning, Dunlap followed Plaintiff around the warehouse. Doc. 1 at 4. Dunlap then asked Plaintiff if he could use the forklift that Plaintiff was using, even though other forklifts were available. Doc. 1 at 4. In response, Plaintiff asked Dunlap if something prevented him from using one of the other available forklifts. Doc. 1 at 4. Dunlap answered affirmatively, and the altercation ensued, continuing until other employees "br[oke] them up." Doc. 1 at 4.

Plaintiff contends that during the resulting investigation, Defendant treated Plaintiff and Dunlap differently. Doc. 1 at 4-5. Plaintiff, not Dunlap, was sent home despite reporting that Dunlap's breath smelled like alcohol during the altercation. Doc. 1 at 4. Plaintiff was also asked to sign a write-up, but he refused to do so. Doc. 1 at 5. Dunlap, on the other hand, listened to a human resources representative's interviews of other employees and told Plaintiff's brother, "Your little brother is a big guy, but I was ready for him." Doc. 1 at 5. In the end, Plaintiff received a final warning, and Dunlap received no discipline. Doc. 1 at 5.

At some point, Dunlap hired "Shun," a white man, despite Shun being unqualified for an unspecified position, per Plaintiff's assessment. Doc. 1 at 5. When Shun dropped a "pallet of cylinders," Dunlap "overlooked the situation" and did not send Shun to take a drug test, even though "standard protocol" required him to do so. Doc. 1 at 5.

On the second-to-last day of Plaintiff's employment, a union representative told Plaintiff that Defendant was "out to get [him]." Doc. 1 at 5. The representative added, "The company

2

knows that your mother works for a bad employment attorney and that she knows people down at the [Equal Employment Opportunity Commission]." Doc. 1 at 5.  The next day, Redding closely followed Plaintiff around the warehouse, which Plaintiff says is a workplace hazard. Doc. 1 at 5-6.

At bottom, Plaintiff posits that Dunlap and Redding provoked him and disciplined him to create pretextual reasons to terminate Plaintiff's employment after Plaintiff complained to human resources about Dunlap's "racially offensive comments and harassment." Doc. 1 at 6.

### B. Procedural History

After filing an EEOC charge and receiving a right-to-sue letter, Plaintiff filed the instant suit, alleging three claims under Title VII: (1) disparate treatment based on his race; (2) hostile work environment based on race-based harassment; and (3) retaliation based on his complaint to HR about Dunlap's "racially offensive comments and harassment." Doc. 1, *passim*.  Defendant Airgas USA, LLC, now moves to dismiss all three claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Doc. 5.  Plaintiff has filed a response, Doc. 16, and Defendant has filed a reply, Doc. 17.  Thus, the motion is ripe for disposition.

## II. LEGAL STANDARD

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To overcome a Rule 12(b)(6) motion, a plaintiff's "complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d

973, 975 (5th Cir. 1995) (quotation omitted).  In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true.  *Twombly*, 550 U.S. at 572.  That said, a complaint should not simply contain conclusory allegations but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citation and quotation omitted).

### III. ANALYSIS

> *A. Plaintiff's disparate treatment claim fails because he has not adequately pled that he suffered any discrimination "because of" his race.*

Plaintiff alleges in his complaint that Defendant "discriminat[ed] against [him] in the terms, conditions, and privileges of employment based on his race." Doc. 1 at 6.  Defendant argues in the motion *sub judice*, however, that Plaintiff neither alleges that he was replaced by someone of a different race nor that similarly situated non-African-American employees were treated more favorably than him.  Doc. 6 at 5.  Defendant adds that Plaintiff's allegations disclose no overt connection to his race.  Doc. 6 at 6.  Plaintiff disagrees, highlighting Defendant's response (or lack thereof) to Shun's pallet-dropping incident, as well as how Dunlap followed Plaintiff around and commented on Plaintiff's physical size and his own criminal history.  Doc. 16 at 5-6.  Upon review the Court finds Defendant's position has merit.

Title VII bars employers from discriminating against individuals with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  At the motion to dismiss stage, a plaintiff must plead two "ultimate elements" to adequately allege a disparate treatment claim under Title VII: "(1) an adverse employment action," (2) taken against him "*because of* [his]

4

protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (emphasis in original) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

Here, the parties dispute the second ultimate element, under which a plaintiff must allege "facts, [either] direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's] race . . . or that [the employer] treated similarly situated employees of other races . . . more favorably." Raj, 714 F.3d at 331. But even construing Plaintiff's well-pleaded factual allegations favorably to him, there are no facts from which the Court can reasonably infer that Plantiff was discriminated against "because of" his race.

Though Shun, Dunlap, and Redding are white, Defendant's treatment of them cannot be compared to Defendant's treatment of Plaintiff. *See Wheel v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) ("To establish disparate treatment, a plaintiff must demonstrate that a similarly situated employee under nearly identical circumstances, was treated differently.") (citation and internal quotation marks omitted). The requisite nearly identical circumstances are absent here.

As to Shun, he dropped a pallet (apparently by accident), and the situation was "overlooked." Doc. 1 at 5. Plaintiff, however, got into a face-to-face altercation with a supervisor and received a final warning. Doc. 1 at 5. Without regard to whether Plaintiff and Shun were "similarly situated," these circumstances are far from "nearly identical." *See Wheel*, 415 F.3d at 406. As to Dunlap and Redding, they cannot be "similarly situated" to Plaintiff, regardless of any "nearly identical circumstances." *See Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 340 (5th Cir. 2021) (holding that a supervisor-supervisee relationship precludes the employees from being "similarly situated").

Likewise, the allegations that Plaintiff highlights in his response—being followed around by Dunlap and subjected to comments about his physical size and criminal history—seemingly

have nothing to do with his race. *See* Doc. 16 at 5-6. While Plaintiff may not have appreciated being followed around, he proffers no facts that, if deemed true, demonstrate that non-African-Americans were not similarly monitored, or, again, that Dunlap's actions were motivated by racial animus. *See* Doc. 1 at 4, 6.

And Plaintiff has provided no basis to infer that other comments about his size were based on his race. *See* Doc. 1 at 3-4. Assuming "coworkers," as pleaded, included Dunlap, the size-related comments, at most, compared him to his older-but-smaller brother. *See* Doc. 1 at 3 ("Plaintiff's coworkers frequently commented about how tall and big he was to be so young and how they could not understand how he was DaMarea's little brother."). His explanation that these comments somehow reinforce a racial stereotype, which he raises only in his response brief, lacks support. *See* Doc. 16 at 6 (opining that "in the black community, constant comments by a white individual about the size or build of a black man when used in a manner indicating that the white individual is afraid of that man is considered a form of racial discrimination."). Nor do Plaintiff's well-pleaded factual allegations reveal that Dunlap did not tease other non-African-American employees about their criminal histories. *See* Doc. 1 at 3-4.

In short, based on Plaintiff's pleading, his allegations of disparate treatment are race-neutral. *See Phillips v. United Parcel Serv.*, No. 3:10-CV-1197-G-BH, 2011 WL 2680725, at *4 (N.D. Tex. June 21, 2011) (Ramirez, J.) ("When a plaintiff sets out facts that do not seem to have anything to do with discrimination based on a protected characteristic, the claim is properly dismissed pursuant to Rule 12(b)(6).") (citation and internal quotation marks omitted), *adopted by* 2011 WL 2678949 (N.D. Tex. July 8, 2011) (Fish, J.), *aff'd by* 485 F. App'x 676 (5th Cir. 2012).

Even if Plaintiff had pled in his complaint that "Dunlap's actions toward [Plaintiff] were by their very nature different to how [Dunlap] treated people outside of Plaintiff's protected group" and not simply raised it in his response brief, such a mere conclusory statement does not suffice. *See, e.g.*, *Whitlock v. Lazer Spot, Inc.*, 657 F. App'x 284, 287 (5th Cir. 2016) (affirming dismissal of a race discrimination claim when "conclusory allegations d[id] not contain sufficient content to allow us to draw the inference that Lazer Spot is liable for terminating Whitlock's employment because of his race"); *Somers v. Univ. of Texas MD Anderson Cancer Ctr.*, No. CV H-19-0390, 2019 WL 5300215, at *3 (S.D. Tex. Sept. 24, 2019) (finding the allegation that "'Defendant intentionally discriminated against [her] because of her race and nationality in violation of Title VII by treating her less favorably than her non-black co-workers'" to be "nothing more than a conclusory allegation") (citations omitted), *adopted sub nom.*, No. 4:19-CV-390, 2019 WL 5294420 (S.D. Tex. Oct. 17, 2019). Because Plaintiff has not pleaded facts establishing that Defendant took any adverse employment action "because of" his race, this claim should be dismissed.

> B. *Plaintiff's hostile work environment claim also fails because he has not alleged that any harassment was based on his race.*

Plaintiff next claims that he endured "racially offensive remarks and harassment," which created a hostile work environment. Doc. 1 at 6-7. Defendant, however, argues that Plaintiff's factual allegations fall short on two bases: (1) they lack an adequate connection to his race; and (2) they are not severe or pervasive enough to support his claim. Doc. 6 at 7-8. To Defendant's first point, Plaintiff counters that his allegations about Dunlap (1) following him around, along with Redding doing the same; (2) spitting ice into his hand and throwing it at Plaintiff; (3) "[getting] in Plaintiff's face" during the altercation; and (4) commenting on Plaintiff's physical

size and criminal history show a "clear link" to Plaintiff's race, considering that Plaintiff "did not witness his supervisor treating non-black employees the same way." Doc. 16 at 6-7. To Defendant's second point, Plaintiff analogizes being followed around to "stalking" and the ice-throwing incident to "one level below being spat on." Doc. 16 at 7.

A Title VII hostile work environment claim has five elements—the third and fourth of which the parties dispute here:

> (1) [He] belongs to a protected group; (2) [he] was subjected to unwelcomed harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (requiring a plaintiff to satisfy only first four elements when the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority).

As to the fourth element, employer violates Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). This inquiry follows a "totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating[;] and whether it unreasonably interferes with an employee's work performance." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (internal quotation marks omitted). While "[n]o single factor is required," "simple teasing, offhand comments, and isolated incidents

8

(unless extremely serious)" cannot sustain a claim. *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 400 (5th Cir. 2021) (citation omitted).

Again, the pleaded allegations have no connection to Plaintiff's race. As discussed *supra*, Plaintiff has alleged no facts from which the Court can glean that the purported following-around and teasing about Plaintiff's size and criminal history was related to his race. The same holds true for the ice-throwing incident and face-to-face altercation. So too should this claim be dismissed, as no such "clear link" exists.[1] *See Phillips*, 2011 WL 2680725, at *4 ("Assuming that these allegations are sufficient to create an inference of harassment or relate to a term, condition or privilege of employment, there are no still factual allegations in the complaint to suggest that the alleged actions were taken based on [plaintiff's] race.").

> *C. Plaintiff's retaliation claim fails because he has not pleaded engagement in a protected activity or a causal link between such engagement and his termination.*

Lastly, Plaintiff claims that Defendant retaliated against him after he reported Dunlap's "racially offensive comments and harassment." Doc. 1 at 6. Defendant stresses that this "single conclusory allegation" of retaliation, without more context, cannot support a claim. Doc. 6 at 9. Defendant also argue that Plaintiff failed to provide sufficient facts to infer a causal connection between his complaints and any adverse employment action. Doc. 6 at 9-10. Plaintiff does not contest Defendant's first position but seeks to amend his complaint to add the approximate date of the complaints, which would show he was fired soon after. Doc. 16 at 7.

Under Title VII, a retaliation claim has three elements (the first and third of which are disputed here): (1) an employee engaged in a protected activity; (2) an adverse employment

---

[1] Given this conclusion, the Court need not address any argument about the severity or pervasiveness of the complained-of conduct.

action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012). An employee engages in a protected activity if he "'oppose[s] any practice made an unlawful employment practice' by Title VII." *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)). But the employee need not demonstrate that the practice was *actually* unlawful; it suffices that he *reasonably believed* the practice was unlawful. *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 242 (5th Cir. 2016). This inquiry is informed by the nature of the statement forming the base of the alleged discrimination, whether the statement was directed at a particular person or group of persons, whether it came from a person with supervisory authority, and the setting where the employee's complaint was voiced. *Id.* at 243-44.

As to whether Plaintiff engaged in a protected activity, Plaintiff has failed to provide enough facts to support a claim. Indeed, his "single conclusory allegation" about Dunlap's comments and harassment only offers "mere labels and conclusions." *See Childers v. Lifestyles Unlimited, Inc.*, No. 3:22-CV-2615-X, 2023 WL 3961702, at *3 (N.D. Tex. June 12, 2023) (Starr, J.) (finding insufficient the allegation that "Lifestyles treated [the plaintiff] adversely after she opposed and reported unlawful discrimination" without knowing "the contents of the discrimination complaint itself"). In turn, Plaintiff has failed to plead his engagement in a protected activity.

He has also failed to plead a basis for the Court to infer a causal connection between his protected activity and his termination. *See, e.g.*, *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 653 (N.D. Tex. 2019) ("Evidence for a causal connection includes: temporal proximity between a protected act and adverse employment action; an employment record that does not

support the adverse action; and an employer's departure from typical policies and procedures."). In light of these deficiencies, this claim thus fails as well.[2]

## IV. LEAVE TO AMEND

Suits should be dismissed without prejudice on Rule 12 motions when possible. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Courts thus generally allow at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Id.*; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548-49 (N.D. Tex. 2014) (Boyle, J.) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction"). Yet courts may appropriately dismiss an action with prejudice upon finding that the plaintiff has alleged its best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Plaintiff has not amended his complaint since filing this action, and it is unclear whether he has pled his best case. In light of that fact and his pro se status, Plaintiff should be granted an opportunity to amend his complaint to sufficiently state a claim for relief, if he can.

## V. CONCLUSION

For these reasons, *Defendant Airgas USA, LLC's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted*, Doc. 5, should be **GRANTED**, and Plaintiff's claims should be **DISMISSED WITHOUT PREJUDICE**. However, if Plaintiff fails to cure the deficiencies noted here by filing an amended complaint within 14 days of the acceptance of this

---

[2] Adding the date of his internal complaint, as he seeks to do, may satisfy this element. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (acknowledging that temporal proximity may suffice when the events are "very close").

recommendation, upon Defendant's re-urging, Plaintiff's claims should be dismissed with prejudice.

**SO RECOMMENDED** on February 21, 2024.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).